**Parrish v. Taystee Baking Co.**

*John A. Parrish,* pro se.

*Robert B. Wilson Jr.* and *Joseph Russell Fowler,* for defendants/appellees.

QUIÑONES ALEJANDRO, *J.,* December 28, 2004—

## INTRODUCTION

These appeals are from two separate orders dated September 13, 2004, which enforced a settlement agreement reached by the parties prior to the commencement of a jury trial. Briefly, the pertinent facts and procedural history are as follows:

On October 12, 1999, while exiting Interstate 476 (the Blue Route) in Montgomery County, Pennsylvania, Maria Parrish Tungol was rear-ended by a Stroehmann Bread truck being driven by Gilberto Wilson (defendant Wilson). On July 17, 2001, as a result of the alleged injuries suffered, including, inter alia, spinal strain, somatic dysfunction, myofascial pain, and exacerbation of an inflammatory bowel disease,[1] John Parrish and Maria Parrish Tungol (husband and wife, both attorneys, plaintiffs) filed a motor vehicle/civil action against defendant Wilson and his employer, Stroehmann's Bakeries, LC.[2]

On October 1, 2001, plaintiffs filed a writ of summons against Taystee Baking Co., and Stroehmann Line-Haul LP, Stroehmann Bakeries Inc. a/k/a Stroehmann Bread Company t/a Stroehmann Line-Haul LP (collectively,

---

1. Plaintiffs' civil action complaint at ¶9.
2. Captioned July term 2001, no. 1902.

defendant Stroehmann) for the same alleged injuries.[3] Although a complaint was never filed on the latter action, plaintiffs filed a motion to consolidate these actions. By order dated March 5, 2002, the Honorable Esther R. Sylvester consolidated the civil actions under the lead case captioned October term 2001, no. 0115.

From the official record (docket), it appears that plaintiffs were initially represented by Alan M. Herman, Esquire. By an order dated February 20, 2003, which was issued by the Honorable Jacqueline F. Allen, paid counsel was allowed to withdraw his representation. On April 10, 2003, John M. Dodig, Esquire, entered his appearance on behalf of plaintiffs. He, too, requested leave to withdraw as counsel, which was granted by an order dated December 2, 2003, and issued by Judge Allen. On March 1, 2004, Robert B. White Jr., Esquire, entered his appearance on behalf of plaintiffs.

As previously stated, on March 4, 2004, prior to the commencement of the jury trial, the parties, represented by counsel, entered into a settlement agreement, and the jury was excused. The general basic terms of the agreement were made part of the court record.[4]

On June 21, 2004, defendant Stroehmann filed a motion to enforce the settlement agreement. In response, on July 21, 2004, plaintiffs filed a motion for sanctions pursuant to the provisions of Pennsylvania Rule of Civil Procedure 229.1.[5] On July 23, 2004, plaintiffs filed their own motion to enforce the settlement.

---

3. Captioned October term 2001, no. 0115.
4. See transcript of March 4, 2004.
5. A motion for sanctions for failure to deliver the settlement funds.

This trial judge scheduled oral arguments on these three motions for August 26, 2004. On that date, counsel and all parties except Maria Parrish Tungol were present. Plaintiffs' counsel advised this trial judge that the parties' misunderstandings were resolved and oral argument would not be needed. Pursuant to the request of both parties' counsel, this trial judge held the motions in abeyance until September 13, 2004, to ensure that the terms of the settlement agreement had, in fact, been satisfied.[6]

On September 13, 2004, this trial judge was advised that plaintiffs refused to sign the release form, contrary to their previous assertions to the court. After entertaining argument, by orders dated September 13, 2004, this trial judge granted defendant Stroehmann's motion to enforce the settlement agreement and directed defendant Stroehmann to deliver the settlement proceeds of $68,000 to plaintiffs within 10 days of receipt of the signed general release agreement provided by defendant Stroehmann. Specifically, this trial judge issued two separate orders which contained, in its pertinent part, the following:

"Plaintiffs are directed to execute a general release in the form requested by defendants within 10 days of the date of this order. Plaintiffs' failure to comply with this order will result in the imposition of appropriate sanctions upon application to the court;"[7] and

"Plaintiffs [ ] sign[ ] the general release provided by defendant's counsel."[8]

---

6. N.T. 8/26/04 at 3:12-5:21.
7. Order dated September 13, 2004, under control no. 04061970.
8. Order dated September 13, 2004, under control no. 04074579.

Dissatisfied with this trial judge's orders, plaintiffs, who for the purpose of this appeal appear to be acting pro se, filed two distinct appeals to the Superior Court arguing that the orders dated September 13, 2004, were entered in error. This trial judge disagrees and, in the interest of judicial efficiency, has consolidated plaintiffs' arguments in this opinion.

## ISSUES

In response to an order issued in accordance with Pennsylvania Rule of Appellate Procedure 1925(b), plaintiffs, on November 1, 2004, filed of record a statement of matters complained of on appeal and argued that this trial judge erred in that:

"(1) Plaintiffs cannot be compelled to execute a written agreement that is not in all respects consistent with the oral settlement agreement recorded in the transcript of the trial proceedings of March 4, 2004;

"(2) the requirement that plaintiffs execute defendants' version of the general release is contrary to basic principles of contract law and at odds with the court's finding that there is a binding and enforceable agreement to settle the above actions in the amount of $68,000;

"(3) the order of September 13, 2004 (control no. 074579) is indefinite since, in fact, the court granted plaintiffs' petition only to the extent that the court found that there was a binding and enforceable settlement agreement on March 4, 2004.

"(4) Defendants' contentions of potential liability to plaintiffs' prior counsel should not have been given any weight by the court since the contentions have no basis in either the facts or the law;

"(5) the court's addition of a condition precedent to the oral settlement agreement recorded in the transcript of March 4, 2004, is contrary to basic principles of contract law;

"(6) as a matter of law, the court cannot rewrite an agreement made by the parties by adding a condition precedent to defendants' obligation to pay the settlement funds;

"(7) the requirements in the order of September 13, 2004 (control no. 074579) that defendants' version of the general release must be signed by plaintiffs prior to payment of the settlement funds is contrary to established Pennsylvania law;

"(8) the requirement in the order of September 13, 2004 (control no. 074579) that defendants' version of the general release must be signed by plaintiffs prior to payment of the settlement funds is unreasonable and unfairly detrimental to plaintiffs; and

"(9) defendants' arguments regarding the need for indemnification against liens are contradicted by the admissions and actions of defendants' counsel whereby defendants waived indemnification by plaintiffs.

"(10) As a matter of law, extrinsic evidence such as defendants' allegations of statements and/or agreements made during preliminary discussions of March 3 and 4, 2004, may not be considered to determine the intent of the parties;

"(11) correspondence, offers, oral statements, etc. by the parties after the in-court agreement of March 4, 2004, are evidence of failed negotiations which have no legal effect on the parties' obligations under the in-court agreement."

## LAW AND DISCUSSION

In essence, plaintiffs' principle underlying appellate argument is that the general release form provided by defendant Stroehmann (see exhibit A) does not comport with the terms of the oral settlement agreement reached on March 4, 2004. In addition, plaintiffs contend that this trial judge erred in considering a "condition precedent" to the oral settlement agreement, and the need for indemnification. This trial judge disagrees.

It is well settled that for an enforceable contract to exist, "there must be a 'meeting of the minds,' whereby both parties mutually assent to the same thing, as evidenced by an offer and its acceptance." *Lal v. Ameriquest Mortgage Co.,* 858 A.2d 119, 123 (Pa. Super. 2004). (citation omitted) This is basic contract law. Here, on March 4, 2004, prior to the commencement of a jury trial, the parties reached a settlement or a meeting of the minds. This agreement consisted of an offer to have the lawsuit marked settled in exchange for the receipt/payment of $68,000, with a "general release" addressing concerns regarding liens for attorney fees expected from the numerous counsel plaintiffs engaged during this litigation. This settlement agreement was briefly summarized and memorialized on the record, out of the presence and hearing of the jury; to wit:

"The Court: . . . we've had an informal discussion with regard to the settlement that has been reached in this case, which amounts to $68,000.

"As a result of the settlement discussions, this court is ordering that the moneys be put in an escrow account for a period of 30 days, to allow counsel for the plaintiffs to

resolve the pending liens for the prior attorneys and their fees. Should the matter not resolve within 30 days, then the moneys will be interpleaded, with the court's willingness to provide any hearing that may be necessary to resolve issues of attorneys' fees.

"Is that our understanding?

"Mr. Fowler: And that the case is settled for a sum of $68,000. The Parish [sic] Tungol's will be sent a general release that the order to settle, end and discontinue—I guess I'll leave that to your honor's discretion when it's to be filed.

"Is it to be—will it be interpleaded under the court term and number of this particular action? I would assume that it would be a separate action that would be filed with regard to the interpleader.

"The Court: If need be, yes.

"Mr. Fowler: So that at the end of the 30-day escrow period, plaintiffs will file the order to settle, end and discontinue.

"The Court: Yes.

"Mr. Fowler: My next question to you is, when the money is paid into the escrow, is it into a Philadelphia Judicial Court of Common Pleas escrow, or to a private banking institution?

"Mr. White: Why don't we put it into my escrow account? I will deposit it into my escrow account, subject to the order that your honor has just entered.

"If we can't resolve the thing within 30 days—incidentally, the 30 days should begin running the day I receive the settlement check. Then defendants and Mr. Fowler and his firm can file an interpleader.

"Mr. Fowler: I would be agreeable to that.

"So that I've crossed all my Ts, I would make the check out to Marie Parrish Tungol, and, of course, Mr. White, as their counsel to be paid.

"At the end of the 30 days, your honor, are you going to have a hearing on this?

"The Court: No. I think counsel would advise us whether the matter has been resolved or not.

"Mr. Fowler: At the end of the 30 days, if it has not been resolved, he then is to file the interpleader; he, being Mr. White?

"Mr. White: That's your . . .

"Mr. Fowler: I can't interplead money I don't have. So attorney to file an interpleader. I need to put together an interpleader complaint, and I've got to attach the check to have it filed at the same time for the court to interplead it in to the court. I've already paid Mr. White; so I think it would have to be Mr. White, if he's in control of the escrow.

"The Court: Mr. White will interplead the money.

"Off the record.

"(Whereupon a discussion took place off the record.)

"The Court: So ordered." [9]

There is no dispute that the parties have a valid settlement agreement. Neither party denies the existence or enforceability of the settlement agreement. On the contrary, both parties filed a motion to enforce the settlement agreement and each submitted a release form for

9. N.T. 3/4/04 at 3:4-6:11.

execution. "The enforceability of settlement agreements is ordinarily determined by the general principles of contract law." *Pulcinello v. Consolidated Rail Corp.,* 784 A.2d 122, 124 (Pa. Super. 2001) (citation omitted), *appeal denied,* 796 A.2d 984 (Pa. 2002). "An oral settlement agreement may be enforceable and legally binding without a writing." *Id.* (citation omitted) "Where parties have reached an oral agreement, the fact that they intend to reduce the agreement to writing does not prevent enforcement of the oral agreement." *Id.,* citing *Kazanjian v. New England Petroleum Corp.,* 332 Pa. Super. 1, 7, 480 A.2d 1153, 1157 (1984).

As stated, neither party opposes the enforcement of the settlement agreement, just the release form itself. Plaintiffs claim that the two-page *General release of all claims* form provided by counsel for defendant Stroehmann contains language or terms that were not discussed and/or mutually agreed upon during the March 4, 2004 court hearing. Plaintiffs further assert that their five-page *Release* form (see exhibit B), does and further, that it provides defendant Stroehmann with all the protections needed to insulate it from future claims. A careful review of these documents reveals that these documents address the basic principles of the oral agreement, although plaintiffs' version does not provide the complete indemnification coverage sought by defendant Stroehmann. In light of this deficiency and the scope of the oral agreement, this trial judge opines that [she] correctly ordered the execution of the general release form submitted by defendant Stroehmann.

In another of their appellate arguments, plaintiffs contend that "the court's addition of a *condition precedent*

to the oral settlement agreement recorded in the transcript of March 4, 2004, is contrary to basic principles of contract law; that as a matter of law, the court cannot rewrite an agreement made by the parties by adding a condition precedent to defendants' obligation to pay the settlement funds; that the requirements in the order of September 13, 2004 (control no. 074579), *i.e.,* that defendants' version of the general release must be signed by plaintiffs prior to payment of the settlement funds, is contrary to established Pennsylvania law; and that the requirement in the order of September 13, 2004 (control no. 074579) that defendants' version of the general release must be signed by plaintiffs prior to payment of the settlement funds is unreasonable and unfairly detrimental to plaintiffs." This trial judge can only opine that plaintiffs are naive to think that defendant Stroehmann would pay them the proceeds of the settlement without requiring them to sign a release form. Plaintiffs clearly understood, at the time of the oral agreement to settle, that there was a concern regarding the apportioning of attorney fees among the three attorneys who represented plaintiffs during different stages of this litigation. In addressing this concern, this trial judge ordered that plaintiffs' then current counsel, Mr. White, hold the proceeds in escrow for 30 days to resolve the potential issues of counsel fees. The release provided by defendant Stroehmann, in this trial judge's opinion, better addressed the parties' agreement and this trial judge's provisos. Clearly, defendant Stroehmann's release form provides that the $68,000 will be held "in escrow until all liens are discharged pursuant to [sic] order of Judge Quiñones . . ." and that plaintiffs "are responsible for the payment of any lien or charges against this settlement sum, in-

cluding but not limited to liens asserted by any other . . . prior counsel or any other attorney . . . ." In this trial judge's opinion, these provisions are not at odds with the oral settlement agreement reached on March 4, 2004, nor with this trial judge's directive that the settlement sum be placed in escrow "to allow [Mr. White] counsel for the plaintiffs to *resolve the pending liens for the prior attorneys and their fees.*" [10]

It seems that the "condition precedent" which plaintiffs complain of is the resolution of pending attorneys' liens, if any exist. This condition precedent is a condition that was discussed and that plaintiffs agreed to when the terms of the settlement agreement were briefly described for the record on March 4, 2004. However, if the argument is that they did not verbalize their agreement, then, in this trial judge's opinion, by not objecting to the terms, plaintiffs tacitly accepted the terms, and consequently, have waived this issue.

Plaintiffs also contend that defendant Stroehmann's "arguments regarding the need for indemnification against liens is contradicted by the admissions and actions of defendants' counsel whereby defendants waived indemnification by plaintiffs." This trial judge is unsure of the meaning of this allegation, and thus, opines that whatever issue is meant by this assertion, is deemed waived. Case law provides that a concise statement which is too vague to allow the court to identify and focus on those issues raised on appeal is the functional equivalent to no concise statement at all. *Kanter v. Epstein,* 2004 Pa. Super. 470, *P13. (citation omitted) Even if the trial court correctly guesses issues appellants raise on appeal

---

10. N.T. 3/4/04 at 3:14-17. (emphasis added)

and writes an opinion pursuant to that supposition, the issues are still waived. *Id.* (citation omitted)

Assuming, arguendo, that plaintiffs have not waived this appellate issue, "[i]n the absence of fraud or mutual mistake, a general release is enforceable according to its terms." *Roth v. Old Guard Insurance Co.,* 850 A.2d 651, 653 (Pa. Super. 2004) (citation omitted); see also, *Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 328-29, 561 A.2d 733, 735 (1989). Plaintiffs argue that defendant Stroehmann waived indemnification by plaintiffs. This argument is incorrect and, in this trial judge's opinion, plaintiffs are the ones who have waived the inclusion of the indemnification provision.

During the August 26, 2004 oral argument, counsel for defendant Stroehmann sought clarification of the agreement, to wit:

"we have an agreement with the plaintiffs that they're going to *indemnify and hold harmless* [Mr. Fowler], Post and Schell, my clients and the insured with regard to any and all claims.

"[Counsel for plaintiffs responded]: *That's correct.*" [11]

Plaintiffs cannot now argue that they did not agree to indemnification and, thus, in this trial judge's opinion, this argument has been waived and warrants no further discussion.

Lastly, plaintiffs argue that "as a matter of law, extrinsic evidence such as defendants' allegations of statements and/or agreements made during preliminary discussions of March 3 and 4, 2004, may not be considered to determine the intent of the parties;" and that "correspondence,

---

11. N.T. 8/26/04 at 4:16-21. (emphasis added)

offers, and/or oral statements made by the parties after the in-court agreement of March 4, 2004, are evidence of failed negotiations which have no legal effect on the parties' obligations under the in-court agreement."

It is a well-settled principle of law that "absent a manifestation of an intent to be bound, . . . negotiations concerning the terms of a possible future contract do not result in an enforceable agreement." *Jenkins v. County of Schuylkill,* 441 Pa. Super. 642, 648, 658 A.2d 380, 383 (1995) (citation omitted), *appeal denied,* 542 Pa. 647, 666 A.2d 1056 (1995). While plaintiffs are correct in their assertion of the law, plaintiffs, however, have not identified what "statements, agreements or failed negotiations" they refer to, or what comprised the "preliminary discussions." This trial judge is at a loss to comment on this vague accusation or argument, and opines that this argument is also deemed waived. It is this trial judge's opinion that the provisions in defendant Stroehmann's release form reflect the understandings of the oral settlement agreement reported to this trial judge and briefly memorialized on the record on March 4, 2004.

## CONCLUSION

Based on the above analysis, this trial judge is of the opinion that no error was committed when ordering the enforcement of the settlement agreement and the use of the general release submitted by defendant Stroehmann. This trial judge respectfully requests that plaintiffs' appeals be dismissed and that the orders dated September 13, 2004, be affirmed.

## EXHIBIT A

## GENERAL RELEASE OF ALL CLAIMS

KNOW ALL MEN BY THESE PRESENTS:

We, Maria Parrish Tungol and John A. Parrish for the sole consideration of $68,000 paid by Stroehmann's Line Haul Co., Gilberto A. Wilson, ESIS, Stroehmann's Bakeries L.C., Stroehmann's Bakeries Inc., Tastyee [sic] Baking Co. (Payers) to plaintiffs' counsel to be held in escrow until all liens are discharged pursuant to order of Judge Quiñones, has released and discharged, and by these presents do for ourselves, our heirs, executors, administrators, and assigns release and forever discharge the said Payers and all other persons, firms, associations, corporations or organizations, both known and unknown, whether named herein or not, of and from any and all claims, demands, damages, actions, causes of action including but not limited to wrongful death and/or survival actions, consortium claims or suits at law or in equity or whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by anyone prior to and including the date hereof on account of all injuries or damages both to person or property whether presently known or unknown, resulting, or which may in the future result, from an incident and/or accident which occurred on or about October 2, 1999, when plaintiff, Maria Parish [sic] Tungol was involved in a motor vehicle accident which occurred near Norristown exit of Interstate 476 northbound in Montgomery County, Pennsylvania, the subject matter of which is presently in suit in the Court of Common Pleas of Philadelphia, in the

lawsuit entitled *Maria Parrish Tungol v. Taystee Baking Co.* at October term 2001, no. 0115 and *Maria Parrish Tungol v. Gilberto A. Wilson,* July term 2001, no. 1902. This further acknowledges that all actions presently in suit against the Payers are to be appropriately marked as settled, discontinued and ended.

We understand that said Payers by reason of agreeing to this compromise payment, deny liability of any sort, and said Payers have made no agreement or promise to do or omit to do any act or thing not herein set forth and I further understand that this release is made as a compromise to avoid expense and to terminate all controversy and/or claims for injuries or damages of whatsoever nature, allegedly arising out of negligence, carelessness and/or recklessness, known or unknown, including future developments thereof, in any way growing out of or connected with said incident and/or accident.

We further agree to indemnify and save harmless the said Payers from all liability, damage, cost and expense of every kind and nature, including but not limited to all liens for medical expenses, medical bills and/or lost wages arising out of any injuries and/or damages allegedly sustained by Maria Parrish Tungol and John A. Parrish.

We admit that no representation of fact or opinion has been made by the said Payers or anyone on their behalf to induce this compromise with respect to the extent, nature or permanency of said injuries or damages as to the likelihood of further complications or recovery there-

from and that the sum paid is solely by way of compromise of a disputed claim, and that in determining said sum there has been taken into consideration the fact that serious or unexpected consequences might in the future result from the present injuries or damages, from said incident and/or accident, and it is, therefore, specifically agreed that this release shall be a complete bar to all claims or suits for injuries or damages of whatsoever nature resulting or to result from said incident and/or accident.

It is further understood and agreed and made part hereof that neither the undersigned nor my attorneys or representatives will in any way publicize in any news or communications media, including, but not limited to, newspapers, magazines, radio or television the facts or terms and conditions of this settlement. All parties to this agreement expressly agree to decline comment on any aspect of this settlement and to keep confidential any and all aspects of this settlement, including the fact of settlement, to any member of the news media or to any other person.

It is further understood and agreed that we are responsible for the payment of any lien or charges against this settlement sum, including, but not limited to, liens asserted by any other individual, group, insurance company, or lien-holder, including any liens by prior counsel or any other attorney. Should any person or entity make a claim for payment of any liens or charges against Gilberto A. Wilson, Stroehmann's Line Haul Co., Taystee Baking Co., Stroehmann Bakeries Inc., Stroehmann Bakeries L.C., ESIS, Joseph R. Fowler, Esquire and/or Post & Schell, we hereby agree to indemnify and hold harmless Gilberto A.

Wilson, Stroehmann's Line Haul Co., Taystee Baking Co., Stroehmann Bakeries Inc., Stroehmann Bakeries L.C., ESIS, Joseph R. Fowler, Esquire and/or Post & Schell from any and all liens, charges, fees, costs, interest and other sums. This is intended to become part of the consideration for settlement of this claim.

The undersigned hereby accepts drafts as final payment for the consideration set forth above.

In Witness Whereof, we have hereunto set our hands and seals this ___ day of _____, 2004.

_____     _____

Witness                               Maria Parrish Tungol

_____     _____

Witness                               John A. Parrish

Sworn to and subscribed before me this ___ day of _____, 2004.

_____

Notary Public

_____

EXHIBIT B

RELEASE

Whereas, Maria Parrish Tungol and John A. Parrish (plaintiffs) are the plaintiffs in a lawsuit filed in the Court of Common Pleas of Philadelphia entitled *John A. Parrish & Maria Parrish Tungol v. Taystee Baking Co., individually as the general partner of and t/a Stroehmann Line*

*Haul L.P.,* October term 2001, case no. 0115 and *John A. Parrish & Maria Parrish Tungol v. Gilberto A. Wilson, and Stroehmann's Line Haul Co.,* July term 2001, case no. 1902 (said lawsuit is hereafter civil action) based on an incident and/or accident which occurred on or about October 2, 1999, when plaintiff Tungol and defendant Gilberto A. Wilson were involved in a motor vehicle accident which occurred near the Norristown exit of Interstate 476 northbound in Montgomery County, Pennsylvania (incident).

Whereas, as of the date hereof there are no other parties known or alleged to be joint tort-feasors with defendant Wilson in connection with incident.

Whereas, plaintiffs were previously represented in civil action by one or more attorneys of Zarwin Baum DeVito Kaplan O'Donnell Schaer P.C., now operating as Zarwin Baum DeVito Kaplan Schaer Toddy P.C. (Zarwin refers to the firm Zarwin Baum DeVito Kaplan Schaer Toddy P.C. and/or any attorney thereof) who withdrew from civil action on the eve of a February 2003 trial and thereafter by one or more attorneys of Masters, Weinstein Schnoll & Dodig P.C. (Masters refers to firm Masters, Weinstein Schnoll & Dodig and/or any attorney thereof) who also withdrew from civil action prior to the trial dates in September and December 2003;

Whereas, under Pennsylvania law, an attorney must prove in proceedings before a court of competent jurisdiction that he or she meets all of the requirements set forth in *Recht v. Urban Development Authority of Clairton,* 402 Pa. 599, 168 A.2d 134 (1961), to establish a valid attorney charging lien (attorney lien);

Whereas, under Pennsylvania law, the amount of any attorney lien cannot exceed the amount of cost, fees, or other disbursements incurred in civil action wherein the amount is proven to a court by the attorney asserting the lien and no such amount has been proven in court with regard to any alleged cost, fee, or other disbursement by Zarwin or Masters or any other attorney;

Whereas, there is no evidence showing that Zarwin or Masters or any other attorney has filed, in court, any notice of, or request for, any attorney lien related to civil action;

Whereas, there are no documents or evidence showing that there is any lien relating to any funds resulting from civil action wherein any such lien has been recognized, established, or imposed by any court of competent jurisdiction after appropriate legal proceedings to determine whether Zarwin or Masters or any other attorney met all of the legal requirements under Pennsylvania law for imposition of a valid attorney charging lien;

Whereas, there was no discussion or agreement between the parties in civil action relating to any interpleader action prior to March 4, 2004;

Whereas, the legal requirements for an attorney lien under Pennsylvania law were never discussed or argued at any time before the trial judge in civil action;

Whereas, the trial judge in civil action was never advised that there were no documents filed in any court showing that Zarwin or Masters or any other attorney had filed any notice of, or request in court for, any attorney lien in connection with any funds resulting from civil action;

Whereas, the trial judge in civil action was never informed that there are no documents or evidence showing that any attorney lien had been properly established and imposed by any court of competent jurisdiction;

Whereas, the trial judge was never informed that, under Pennsylvania law, the amount of any attorney lien cannot exceed the amount of cost, fees, or other disbursements proven by the attorney having the attorney lien nor was the trial judge informed that such an amount has never been proven with regard to any alleged cost, fee, or other disbursement by Zarwin or Masters or any other attorney;

Whereas, the order of the trial judge relating to the delay in payment of the settlement funds to plaintiffs and the filing of an interpleader action by plaintiffs' attorney was made without consideration of Pennsylvania law relating to the requirements for the establishment of attorney liens, without any written evidence that any valid attorney liens had been established, and without consideration or determination of the court's jurisdiction to issue any order delaying payment of the settlement funds to plaintiffs or any order requiring plaintiffs' attorney to file an interpleader action.

### Consideration for Release

The sole consideration for this release is $68,000 (settlement funds). Defendants in the above civil action have identified Stroehmann's Line Haul Co., Gilberto A. Wilson, ESIS, Stroehmann's Bakeries L.C., and Stroehmann's Bakeries Inc., Tastyee [sic] Baking Co. as payors of settlement funds. The payment of settlement

funds shall be made in a manner specified by plaintiffs' attorney for deposit into an escrow account.

### Release of Claims That Were Made or Could Have Been Made in Civil Action

Subject to the condition precedents of (1) payment of settlement funds in a manner specified by plaintiffs' attorney to an escrow account and (2) receipt of settlement funds (minus the amount of any valid attorney lien(s)) by plaintiffs 30 days or less after payment of settlement funds into the escrow account, plaintiffs hereby for themselves, their heirs, executors, administrators, and assigns, release and forever discharge Stroehmann's Line Haul Co., ESIS, Stroehmann's Bakeries L.C., Stroehmann's Bakeries Inc., Tastyee [sic] Baking Co., and all their current, former and future officers, employees, servants, agents, shareholders, affiliates, successors, and assigns and all of their heirs, executors, and administrators, and Gilberto A. Wilson and all of his heirs, executors, and administrators (all of the foregoing parties are releasees) and all other persons, firms, associations, corporations, or organizations both known and unknown of and from any and all claims which were made or could have been made in the complaint filed in civil action.

### Release of Other Claims

Subject to the condition precedents (1) and (2) as set forth in the previous section, plaintiffs hereby for themselves, their heirs, executors, administrators, and assigns release and forever discharge said releasees and any and

all parties proven to be joint tort-feasor(s) with Gilberto A. Wilson in the incident from any and all claims, demands, damages, actions, causes of action including, but not limited to, wrongful death and/or survival actions, consortium claims or suits at law or in equity or whatsoever kind or nature, for or because of any matter or thing done, omitted or suffered to be done by anyone prior to and including the date hereof on account of all injuries or damages both to person or property whether presently known or unknown, resulting, or which may in the future result, from incident.

## Ending of Civil Action

Upon receipt of settlement funds (minus the amount of any valid attorney lien(s)) by plaintiffs, civil action will to be appropriately marked as settled, discontinued and ended.

## No Liability, No Other Agreement, No Admission

Plaintiffs understand that said releasees by reason of agreeing to the compromise payment of settlement funds deny liability of any sort. Neither plaintiffs nor said releasees have made any agreement or promise to do or omit to do any act or thing not herein set forth. This release is made as a compromise by plaintiffs and releasees to avoid expense and to terminate all controversy and/or claims with or against releasees for injuries or damages of whatsoever nature, allegedly arising out of negligence, carelessness and/or recklessness, known or unknown, including future developments

thereof, in any way growing out of, or connected with, incident.

Nothing in this release is intended to be, will be construed as, or is any admission or agreement by plaintiffs with any argument, contention, or position made or taken by releasees, releasees' attorney or any other party. Nothing in this release is intended to be, will be construed as, or is any admission or agreement by plaintiffs of any liability whatsoever to any party. Nothing in this release is intended to be, will be construed as, or is any admission or agreement by plaintiffs regarding the propriety of the order of the trial judge in civil action on March 4, 2004, relating to payment of settlement funds or the court's jurisdiction or authority to issue such an order.

## Exclusions

Notwithstanding the previous sections, nothing in this release is intended to be, shall be construed to be, or is any release or discharge of (1) any claim or cause of action against any party for medical treatment of plaintiff Tungol by that party or its affiliates, partners, agents, or employees; (2) any claims or causes of action against Zarwin and/or Masters (prior counsel); or (3) any claims or causes of action related to any effective term of this release.

## No Representation of Fact or Opinion

No representation of fact or opinion has been made by the said releasees or anyone on their behalf to induce this compromise with respect to the extent, nature or

permanency of said injuries or damages as to the likelihood of further complications or recovery therefrom and that the sum paid is solely by way of compromise of a disputed claim, and that in determining said sum there has been taken into consideration the fact that serious or unexpected consequences might in the future result from the present injuries or damages, from said incident and/or accident.

## Confidentiality

It is further understood and agreed and made part hereof that neither plaintiffs nor their attorneys or representatives will in any way publicize in any news or communications media, including, but not limited to, newspapers, magazines, radio or television, the facts or terms and conditions of this settlement. Plaintiffs expressly agree to decline comment on any aspect of this settlement and to keep confidential any and all aspects of this settlement to any member of the news media or to any other person subject to the condition precedent that releasees or their attorney have not disclosed any aspects of this settlement to any other person, including prior counsel. Plaintiffs will keep confidential any and all aspects of this settlement as long as releasees and releasees' attorney likewise keep confidential any and all aspects of this settlement.

## Indemnification (Medical and Lost Wage)

Subject to the condition precedent of receipt of settlement funds (minus the amount of any valid attorney lien(s)) by plaintiffs 30 days or less after payment of

settlement funds into the escrow account, plaintiffs hereby further agree to indemnify and save harmless said releasees from all liability, damage, cost and expense of all liens for medical expenses, medical bills and/or lost wages arising out of any injuries and/or damages allegedly sustained by plaintiffs.

## *Indemnification (Liens of Prior Counsel)*

Subject to all of the conditions precedent specified below in this section, plaintiffs further agree to indemnify and save harmless said releasees and Joseph R. Fowler and/or Post & Schell (releasees' attorney) from all liability, damage, cost and expense of all liens, charges, fees, costs, interest, and other sums caused by any attorney lien(s) recognized and granted by a court of competent jurisdiction to prior counsel or any other attorney who has represented plaintiffs.

Plaintiffs' obligations under this section are subject to all of the following conditions precedent: Plaintiffs have received settlement funds (minus the amount of any valid attorney lien(s)) 30 days or less after payment of settlement funds as specified by plaintiffs' attorney into the escrow account; no interpleader action relating to settlement funds has been filed; releasees' attorney has provided plaintiffs with written evidence of the factual bases and the legal bases for any allegation that prior counsel have established any attorney lien(s) against settlement funds; releasees' attorney has disclosed to plaintiffs all communications related in any way to civil actions between releasees or releasees' attorney and prior counsel, including the dates and content of any non-written

communications and copies of all written communications; releasees' attorney has promptly provided plaintiffs with any documents showing the filing in court of a request or notice of a lien against settlement funds by prior counsel; releasees' attorney has provided plaintiffs with any documents showing the recognition and establishment of attorney lien(s) to prior counsel by a court of competent jurisdiction after legal proceedings to establish prior counsel's right to any lien; neither releasees nor their counsel have disclosed any material information to prior counsel regarding civil action since March 1, 2004, including any proposed or agreed upon terms of settlement; neither releasees nor releasees' attorney have any agreement or understanding of any kind with prior counsel in connection with civil action or the settlement thereof; releasees and releasees' attorney agree to reasonable terms of cooperation with plaintiffs in the defense of any claims based on any attorney lien(s) by prior counsel against releasees and/or releasees' attorney; and releasees and releasees' attorney agree to assign to plaintiffs all claims and causes of action which they may have against prior counsel as a result of civil proceedings commenced or continued by prior counsel against releasees and/or releasees' attorney in connection with any payment of settlement funds. This indemnification is intended to become part of the consideration for settlement of civil action.

## Arbitration

Any dispute with respect to any effective term of this release shall be resolved by a neutral arbitrator of the American Arbitration Association.

In Witness Whereof, we have hereunto set our hands and seals this 24th day of May, 2004.

/s/Maria Parrish Tungol

MARIA PARRISH TUNGOL

/s/John A. Parrish

JOHN A. PARRISH

Sworn to and subscribed before me this 24th day of May, 2004.

/s/Anthony V. Murphy

Notary Public

NOTARIAL SEAL

Anthony V. Murphy, Notary Public

Yeadon Boro, Delaware County

My Commission Expires March 7, 2005

Member, Pennsylvania Association of Notaries